### R. L. WATSON v. STATE.

No. A-4923.    Opinion Filed May 23, 1925.
(236 Pac. 60.)

(Syllabus.)

**Homicide—Evidence Sustaining Conviction of Manslaughter in First Degree.** In a prosecution for murder, evidence held to sustain a conviction of manslaughter in the first degree.

Appeal from District Court, Oklahoma County; Wm. H. Zwick, Judge.

R. L. Watson, alias Bob Watson, was convicted of manslaughter in the first degree, and he appeals. Affirmed.

H. C. Hurst, E. J. Giddings, and Wm. Pfeiffer, for plaintiff in error.

The Attorney General, for the State.

DOYLE, J. The plaintiff in error, R. L. Watson, alias Bob Watson, was informed against for the killing of one J. W. Graif, alleged to have been committed February 25, 1923, by cutting and stabbing said Graif with a butcher knife. On the trial the jury returned a verdict finding him guilty of manslaughter in the first degree and assessing his punishment at imprisonment in the penitentiary for a term of ten years.

From the judgment rendered in pursuance of the verdict, the defendant was permitted to perfect an appeal as a poor person, and the petition in error with case-made was filed in this court November 21, 1923.

The defendant is not represented in this court, and no brief in support of the assignments of error has been filed. Upon an examination of the whole record, we find only one question presented which seems of sufficient importance to require discussion in an opinion; that is, the sufficiency of the evidence to support the verdict.

The facts and circumstances preceding the homicide are not greatly in dispute. It appears that the deceased, J. W. Graif and his wife, Floyd Miller, and Mrs. Lola France were joy-riding in a Ford sedan, driven by Mrs. France; about 9 o'clock in the evening, they stopped at the defendant's place on South Walker street, Oklahoma City; there had been some drinking before they stopped at the defendant's place; there Mrs. Graif gave the defendant $5 for a bottle of whisky; they all took a drink, and

the bottle was left on the ice box in the kitchen; they played the phonograph and there was some dancing; Miller and Mrs. France got into an argument, and the deceased and his wife went to the kitchen; he reached for the bottle, and as he did so shoved his wife out of the way and she fell over a chair; then a fight started between the defendant and the deceased. Mrs. Graif testified that she did not see any knife; they were on the floor, and she went back to the other room and asked Mr. Miller to separate them. Mrs. Lola France testified:

"I was sitting in the front room, and the first thing I knew about the fight Mrs. Graif ran in from the kitchen and said: 'Go in and separate them; they are fighting.' Floyd Miller went in and separated them. I saw Mr. Graif lying on the floor. The defendant said: 'Get him out of here. The law will be here in a little while.' They carried him to my car and after they put him in I felt of his pulse and said, 'I believe the man is dead.' "

R. A. McGill, interne at the University Hospital, testified that he was there when the body of J. W. Graif was taken there; that his examination disclosed that the wound was in the back, just below the costal margin, about an inch to the right of the spinal column; that it was a stab wound, about an inch and a half long; that he pronounced him dead, and within 10 minutes the body was taken by the undertaker.

The testimony of the defendant in his own behalf is as follows:

They came in and had some choc beer with them and wanted me to drink some. I would not drink any; I don't drink. They were all pretty full, and they started the Victrola and wanted to dance. Floyd Miller and Mrs. France finally got into an argument, and he slapped her. Then Mr. Graif said, "Let me hit her," and Mrs. Graif got hold of him and says: "Come on now, and let's go home; you stay out of their trouble." And they went into the kitchen. I went in there, and she was talking to him; and I tried to

tell him that she was telling him right, and he hit her and pushed her back over a chair. I said: "Don't do that. The lady has not done anything to you." I did not know whether she was his wife or not. I had met Mr. Graif once before that, three or four days previous, but I did not know his name. Then he hit me, and I knocked him back against the wall. Then he ran at me again, and I shoved him back. There was a little knife that we cooks and waiters call a French knife—we use it for a carving knife—on the ice box. He grabbed that, and then I grabbed his hand, and in the scuffle I tried to jerk loose from him. I was holding his wrist trying to keep him from cutting me, and in the fracas he fell on the knife and I fell on top of him. I had him clinched. When he fell he kind of relaxed and didn't make any fight, so I got up and he got up, and I grabbed the knife. It was sticking in his back, and I grabbed it and threw it out the door. He took about three or four steps and fell. Mr. Miller said: "He is hurt pretty bad. Let's put him in the car and take him to the hospital." So we put him in the car. They all left, and in the excitement I left too and went to Healdton. I was under federal bond of a thousand dollars, and on March 13th I returned, and my bondsmen surrendered me to the federal officers, and they turned me over to the state officers.

On cross-examination he stated that his only business for six or seven years previous was selling whisky and beer; that Mrs. Graif gave him a $5 bill for a bottle of whisky that evening.

From the testimony it appears that the deceased was very drunk, and that while he may have assaulted or attempted to assault the defendant, the jury did not believe the defendant's story that the assault was committed with the knife in question, and evidently the jury did not believe the defendant's story that the deceased stabbed himself in the back accidentally or otherwise.

As to the character of the homicide, there can be but little doubt; it was a cruel cold-blooded killing.

As shown by the record, the defendant has had a fair and impartial trial.

In our view the verdict rendered was exceedingly lenient under the circumstances; and, there appearing no error in the record, the judgment herein is affirmed.

BESSEY, P. J., and EDWARDS, J., concur.